**KOLLER LAW LLC**
David M. Koller, Esq. (90119)                               *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DESHIA BRADLEY,** | : | Civil Action No. |
| 7123 N 20th Street | : | |
| Philadelphia, PA 19138 | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **Complaint and Jury Demand** |
| | : | |
| **CSL PLASMA, INC.,** | : | |
| 101 E Olney Avenue, Unit 10 | : | |
| Philadelphia, PA 19120 | : | |
| | : | |
| 900 Broken Sound Parkway NW, Suite 4 | : | |
| Boca Raton, FL 33487 | : | |
| Defendant. | : | |

## CIVIL ACTION

Plaintiff, Deshia Bradley (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against CSL Plasma, Inc. (hereinafter "Defendant"), for violations of the Americans with Disabilities Act of 1990 ("ADA") and the Pennsylvania Human Relations Act ("PHRA"). In support thereof, Plaintiff avers as follows:

### THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, CSL Plasma, Inc. is a plasma collection company with a location at 101 E Olney Avenue, Unit 10, Philadelphia, PA 19120 and a corporate

headquarters located at 900 Broken Sound Parkway NW, Suite 4, Boca Raton, FL 33487.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original

jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted her administrative remedies under the Americans with Disabilities Act of 1990, as amended and the Pennsylvania Human Relations Act.

13. Plaintiff timely filed a Complaint of Discrimination ("Complaint") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and retaliation against Defendant.

14. The Complaint was assigned a Charge Number of 530-2021-03023 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated August 23, 2021. Plaintiff received the notice by electronic mail.

16. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter.

18. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. On February 7, 2020, Defendant hired Plaintiff as a Donor Support Technician.

21. Plaintiff was well qualified for her position and performed well.

22. In or around April 2020, Plaintiff became a Phlebotomist.

23. Plaintiff was well qualified for her position and performed well.

24. In or around April 2020, Jennifer Oliver, Phlebotomist, repeatedly made comments and laughed about how she was around COVID-19 all the time.

25. Robin Renee Dorsey, Manager, overheard Ms. Oliver's comments, but took no action to address them.

26. Due to Plaintiff's disability of asthma, she is considered "high risk" for COVID-19.

27. The major life activities affected by asthma, include, but are not limited to, breathing, working and proper respiratory function.

28. Defendant and its agents were well aware of Plaintiff's disability.

29. As a result, Plaintiff felt that Ms. Oliver's comments were inappropriate and discriminatory.

30. Plaintiff complained to Derek Morner, Acting Center Manager, in person about Ms. Oliver's discriminatory comments and that Defendant refused to properly address it.

31. Mr. Morner instructed Plaintiff to write a statement regarding the situation.

32. Plaintiff followed Mr. Morner's instructions and submitted a written statement to him.

33. Mr. Morner proceeded to send his complaint to corporate.

34. Following Plaintiff's complaint, in or around early May 2020, Ms. Dorsey began to change Plaintiff's schedule without her knowledge.

35. Plaintiff initially changed her schedule due to childcare issues due to the COVID-19 pandemic.

36. Defendant was well aware of this and approved Plaintiff's schedule change.

37. However, Ms. Dorsey continued to change Plaintiff's schedule without providing her any notification.

38. This resulted in Tascha Montgomery, Manager, and Nancy Bolds, Supervisor, issuing Plaintiff reprimands for attendance violations that she was not aware that she committed.

39. On July 5, 2020, Plaintiff went out on a leave of absence for childcare issues due to the COVID-19 pandemic.

40. Plaintiff was set to return to work on September 7, 2020.

41. On July 5, 2020, Plaintiff spoke with Donna Richardson, Human Resource Representative, about her leave of absence.

42. Ms. Richardson informed Plaintiff that she was on a Final Written Warning.

43. Plaintiff had not previously received any write ups.

44. When Plaintiff attempted to dispute the Final Written Warning, Ms. Richardson informed Plaintiff that she had just received the write ups that day from Ms. Dorsey, was approving the Final Written Warning and that Plaintiff could not contest the disciplines with her.

45. On September 7, 2020, Plaintiff returned to work at Defendant.

46. In the end of October 2020, Plaintiff suffered from an episode related to her disability.

47. Plaintiff was required to receive treatment at Abington Hospital that day.

48. The following day, Dr. Gary R. Salzman, Primary Care Physician, placed Plaintiff on a medical leave of absence for one (1) week.

49. Plaintiff informed Defendant of this and her leave of absence was approved.

50. However, Ms. Dorsey attempted to force Plaintiff to return to work before she was medically cleared to do so.

51. The following week, Plaintiff met with Michelle Dion, Center Manager, and Ms. Dorsey and complained about Ms. Dorsey repeatedly changing her schedule without giving her any notification.

52. Plaintiff stated that she felt Ms. Dorsey was singling her out.

53. Ms. Dorsey attempted to deny doing this on purpose, but Plaintiff provided evidence that she did, in fact, change her schedule without providing her any notice.

54. On November 9, 2020, Plaintiff severely cut her hand at home and was required to go to Patient First – Abington for treatment.

55. Plaintiff reported to work on November 10, 2020.

56. However, Plaintiff was forced to go home early, as she was in extreme pain and her hand suffered significant swelling.

57. Defendant approved Plaintiff's request to leave work early.

58. On November 11, 2020, Plaintiff was examined by Dr. Salzman who placed her on a medical leave of absence until November 18, 2020.

59. Plaintiff immediately called Defendant and informed Christopher Thrope, Manager, that she had been placed on a medical leave of absence until November 18, 2020.

60. Ms. Dorsey was also present during the phone call.

61. Mr. Thrope approved Plaintiff's medical leave and informed Plaintiff that he would notify Ms. Dion of Plaintiff's medical leave.

62. However, Ms. Dorsey contacted Plaintiff and attempted to have her return to work before she was medically cleared to do so.

63. Plaintiff refused to return to work until she was medically cleared to do so.

64. On November 18, 2020, Ms. Dorsey called and terminated Plaintiff for an alleged no call no show on November 14, 2020.

65. Plaintiff was on a medical leave of absence at this time.

66. Plaintiff informed Ms. Dorsey of this, but she replied that Defendant did not have to "honor" Dr. Salzman's note.

67. It is Plaintiff's position that she was discriminated against due to her disability, denied a reasonable accommodation and retaliated against for reporting discrimination and requesting a reasonable accommodation in violation of the ADA and the PHRA.

## COUNT I – DISABILITY DISCRIMINATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

68. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

69. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

70. Plaintiff was qualified to perform the job.

71. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

72. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

73. Defendant did not have a legitimate non-discriminatory reason for terminating Plaintiff.

74. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

75. The purported reason for Defendant's decision is pretextual.

76. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

77. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

78. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – DISABILITY DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

79. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

80. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

81. Plaintiff has disabilities that substantially limit major life activities.

82. Plaintiff was qualified to perform the job.

83. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

84. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

85. Defendant did not have a legitimate non-discriminatory reason for terminating Plaintiff.

86. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

87. The purported reason for Defendant's decision is pretextual.

88. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

89. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

90. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – RETALIATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

91. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

92. Plaintiff engaged in activity protected by the ADA when she requested a reasonable accommodation.

93. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

94. There exists a causal connection between Plaintiff's participation of the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

95. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

96. Plaintiff engaged in activity protected by the PHRA when she requested a reasonable accommodation.

97. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

98. There exists a causal connection between Plaintiff's participation of the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Deshia Bradley, requests that the Court grant her the following relief against Defendant:

(a) Compensatory damages;

(b) Punitive damages;

(c) Liquidated damages;

(d) Emotional pain and suffering;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for negative tax consequences;

(i) A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA and the PHRA.

(j) Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which

        provide equal employment opportunities;

(k)     Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

                                                               Respectfully Submitted,

                                                               KOLLER LAW, LLC

Date: November 22, 2021                 **By:**   */s/ David M. Koller*
                                                              David M. Koller, Esquire (90119)
                                                               2043 Locust Street, Suite 1B
                                                               Philadelphia, PA 19103
                                                               215-545-8917
                                                               davidk@kollerlawfirm.com

                                                              *Counsel for Plaintiff*